IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **AMY OWENS** | * | **CIVIL ACTION NO. 05-0995** |
| **VERSUS** | * | **JUDGE JAMES** |
| **GILSBAR, INC., McGLINCHEY STAFFORD, PLLC, HEALTH CARE PLAN, and McGLINCHEY STAFFORD, PLLC** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an Employment Retirement Income Security Act ("ERISA") appeal filed by plaintiff, Amy Owens ("Owens"). (Document No. 24). Defendants, Gilsbar, Inc. ("Gilsbar") and McGlinchey Stafford, PLLC, Health Care Plan have opposed Owens' motion. (Document No. 25). Owens has filed a reply to the defendants' opposition. For reasons stated below, it is recommended that the defendants' denial of benefits be **REVERSED** and that Owens be awarded benefits related to her surgery for a deviated septum.

## BACKGROUND

This action arises from the denial of medical benefits provided under an ERISA plan, 29 U.S.C. § 1001, *et seq.* As part of her employment with McGlinchey Stafford, PLLC, a general practice law firm, Owens enrolled in the McGlinchey Stafford, PLLC, Health Care Plan ("Plan") on July 7, 2003, with coverage beginning on August 1, 2003. Owens began her employment with the firm on August 8, 2003, and left it in October of 2003; her coverage ended on October 31, 2003.

The Plan is self-funded, and, by contract, claims under the Plan are processed by Gilsbar, the Plan's Benefits Service Manager. The Plan denies coverage for medical expenses related to a "pre-existing condition" for the first twelve months of enrollment. Under the Plan, such a

condition is defined as:

> an injury or illness for which a covered person received medical advice, diagnosis, care or treatment that was recommended or received for the condition during the six-month period prior to his enrollment date under the plan.

Rec. Doc. No. 20, p.3. Thus, because Owens was employed by McGlinchey Stafford, PLLC, for less than a year, she had no coverage for any injury or illness for which she received medical advice, diagnosis, care or treatment that was recommended or received for the condition between January 7, 2003, and July 7, 2003.

On September 23, 2003, Owens was seen by Dr. Lawrence J. Danna ("Danna"), an Ear, Nose, and Throat ("ENT") physician, with complaints of a swollen uvula. During his examination, he discovered that Owens had a nasal septal deviation with 100% obstruction and turbinate hypertrophy. In a letter dated February 18, 2004, Danna noted that no physician had referred Owens to him and that Owens had not received any prior treatment for this condition. Shortly after diagnosing Owens with the condition, on October 8, 2003, Danna performed surgery on Owens to correct the deviation. The resulting medical expenses, including visits with other doctors, totaled $23,469.08.

Owens submitted her medical expenses to the Plan for payment, but the Plan denied her request on the ground that her nasal septal deviation was a pre-existing condition, as defined above. The basis for this denial was Owens' prior treatment on March 31, 2003, by Dr. Gary Lowder ("Lowder") for allergic rhinitis, a condition characterized by frequent headaches, sneezing, runny nose, and left frontal pain.[1] According to the Plan, the symptoms for allergic rhinitis overlap with those for a nasal septal deviation and, therefore, were evidence that the plaintiff suffered from the deviation prior to her date of coverage, July 7, 2003.

## LAW AND ANALYSIS

---

[1] Owens was treated by Lowder again on September 12, 2003, within the Plan's coverage period, for similar symptoms.

Standard of Review

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, because it is undisputed that the Plan's administrator, McGlinchey Stafford, PLLC ("Administrator"), possessed the discretionary authority to construe the Plan's terms, the court is limited to a review of those constructions for abuse of discretion, or, in other words, whether the constructions are arbitrary and capricious. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 211, 213 (5th Cir. 1999). Under an arbitrary and capricious standard, the Administrator's decision must be affirmed if it is supported by substantial evidence. *Meditrust Financial Services Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 215 (quoting *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir. 1996) *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828-9 (5th Cir. 1996)). Eligibility for benefits under any ERISA plan is governed by the plain meaning of the plan language. *See Threadgill v. Prudential Securities Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998).

Pre-existing Condition

Although the parties have allocated much of their argument to an evidentiary dispute, the determinative issue is whether, in light of the submitted medical evidence, the Administrator's conclusion that Owens' deviated septum was a "pre-existing condition" is arbitrary and capricious. As noted above, the existence of a pre-existing condition under the Plan is determined by the reasons for which an individual received prior medical treatment; the medical advice or treatment at issue must have been "recommended or received **for the condition**." Rec. Doc. No. 20, p.3. (emphasis added). Here, despite the absence of any prior diagnosis of a

3

deviated septum, the Plan Administrator construed Owens' pre-coverage symptoms, which were common to rhinitis, deviated septa, and, presumably other sinus and nasal conditions, as evidence that she suffered from a preexisting condition under the Plan. The undersigned finds this construction to be arbitrary and capricious.

First, none of Owens' prior medical records indicate that she suffered from a deviated septum. Her only prior treatment within the relevant six-month period was from Lowder, who concluded, based on Owens' complaints of headache, runny nose, and left frontal pain, that she suffered from allergic rhinitis. Admin. Rec., p. 34. There is no evidence that Lowder ever suggested that Owens was suffering from a deviated septum. *Id.* Following the Plan's own definition of a pre-existing condition, Owens received "medical advice, diagnosis, care, or treatment that was recommended or received for" allergic rhinitis, not a deviated septum. The record contains no evidence that the plaintiff did not suffer from allergic rhinitis, or that the treatment given was not appropriate to treat allergic rhinitis or that the treatment given was an appropriate treatment for a deviated septum. While there is evidence that persons with deviated septa may be more likely to suffer from sinus infections, allergic rhinitis, and the like, there is no evidence that persons without deviated septa do not suffer from such illnesses. Thus, while it is probable as a factual matter that the deviated septum existed prior to the coverage period, there is simply no evidence to support a conclusion that Owens' deviated septum was treated or diagnosed prior to her coverage under the Plan.

The Administrator's conclusion that Owens' symptoms of allergic rhinitis were either a diagnosis or treatment for a deviated septum was an arbitrary and capricious interpretation of the Plan's definition of a pre-existing condition. Under the Administrator's view, any symptom involving the sinuses or nasal passages, ranging from a runny nose to a headache, would, without anything more, be sufficient for a physician to make a diagnosis that an individual suffered from a deviated septum. This view would virtually do away the Plan's requirement that, for purposes

4

of determining a pre-existing condition, an individual must receive diagnosis, care, or treatment **for the condition** within the six months prior to coverage. If the words in the Plan's definition are to have meaning, the phrase "for the condition" requires that the treatment or diagnosis actually be for the condition alleged to be preexisting, not for some other illness which, although more likely to occur because of the underlying undiagnosed and untreated condition at issue, was not in fact diagnosed or treated. Under the facts presented, the Administrator's decision that Owens' deviated septum was a pre-existing condition under the Plan's definition is not supported by substantial evidence, and therefore is arbitrary and capricious.

For the reasons stated above, it is recommended that the Administrator's decision to deny benefits based on a pre-existing condition be **REVERSED**, and that the Plan be ordered to provide Owens with benefits in the amount of $23,469.08 for expenses related to her surgery for a deviated septum.

Attorney's Fees

Owens also seeks attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). When determining whether to award attorneys' fees and costs in the ERISA context, the Court must consider, with no particular significance to any one factor, the following factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

Given the facts of this case, the Court's broad discretion in awarding such fees, and the factors listed above, the undersigned recommends that Owens' request be **GRANTED** and that she be awarded reasonable attorney's fees herein.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of March, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE